S12F1502. BLACK v. BLACK.
(740 SE2d 613)

BLACKWELL, Justice.
Aaron Charles Black and Michelle Lee Black were married in 1996, and after four children were born of their marriage, they were divorced in Houston County. Michelle appeals from the final decree of

divorce,[1] contending that the trial court was without jurisdiction to grant a divorce, that it erred when it refused to stay its proceedings in favor of pending divorce proceedings in New York, and that it erred in its final decree with respect to an equitable division of marital property, child support, and a provision that evidently was intended to enable Michelle to retain her health insurance. We agree that the trial court erred with respect to a deviation from the presumptive amount of child support to account for the payment of life insurance premiums, and we also agree that the trial court erred in its framing of the provision to enable Michelle to retain her health insurance, so we vacate those portions of the decree and remand for further proceedings consistent with this opinion. We find no other error, however, and we otherwise affirm the final decree of divorce.

1. We first consider whether the trial court had jurisdiction to grant a divorce in this case, and we begin our consideration with OCGA § 19-5-2, which provides in pertinent part that "[n]o court shall grant a divorce to any person who has not been a bona fide resident of this state for six months before the filing of the petition for divorce."[2] As we have explained before, the party petitioning for a divorce bears the burden to prove that he was a "bona fide resident" of Georgia for the time required by OCGA § 19-5-2, and to carry that burden, the petitioner must show that he was domiciled in Georgia for the six months preceding his filing of the petition. *Kuriatnyk v. Kuriatnyk*, 286 Ga. 589, 590 (1) (690 SE2d 397) (2010). We also have explained that, to show such domicile, the petitioner must prove that he maintained actual residence in Georgia during the relevant time and that he had an intent at that time to remain in Georgia indefinitely.[3] *Padron v. Padron*, 281 Ga. 646, 646 (641 SE2d 542) (2007). See also *Conrad v. Conrad*, 278 Ga. 107, 108 (597 SE2d 369) (2004) ("[Domicile] requires both act and intent to establish a residence, and either without the other is insufficient." (Citation and punctuation omitted)). In this case, the trial court heard evidence on the domicile of the parties, and although some evidence pointed each way, the trial

---

[1] Michelle timely filed an application for discretionary review, see OCGA § 5-6-35 (a) (2), and we granted that application pursuant to our Rule 34 (4).

[2] OCGA § 19-5-2 makes provision for a nonresident to petition a Georgia court for divorce in some circumstances when the respondent is a Georgia resident, but insofar as Aaron always has asserted that he was a "bona fide resident" of Georgia for the required time, we have no occasion in this case to consider whether jurisdiction might properly have been based on the residence of Michelle.

[3] If one intends to remain indefinitely in the place of his actual residence, he is domiciled in that place, even if he has "a floating intention to return [to some earlier residence] or to move somewhere else at some future period." *Campbell v. Campbell*, 231 Ga. 214, 215 (1) (200 SE2d 899) (1973) (citation and punctuation omitted).

court found that Aaron "[was] here in Houston County for years and there was an intention to remain in this place for an indefinite period of time." So long as any evidence appears in the record to support these findings, we must accept them. *Rymuza v. Rymuza*, 292 Ga. 98, 102 (4) (734 SE2d 384) (2012).

We think that the evidence of record is sufficient to support the findings of the trial court on domicile. Aaron filed his petition for divorce on April 13, 2010, so the time for which his domicile mattered with respect to jurisdiction is the six months preceding that date. See OCGA § 19-5-2. In the course of the proceedings below, there was testimony that Aaron is a noncommissioned officer in the Air Force, that he is posted at Robins AFB, that he and Michelle first moved to Georgia in August 2000, that they lived together in military housing until 2004, that they bought their own home in the Warner Robins area in 2004 and lived together in that home for a few months, that Michelle and the children continued to live in that home after Aaron and Michelle separated until sometime in 2010, that Aaron moved into an apartment in the Warner Robins area when he and Michelle separated, that Aaron has continued to live in the Warner Robins area since that time, that his parents live in Georgia, and that he intends to continue serving in the Air Force for as many as ten more years. There was no evidence that Aaron had any intent at any time to relocate to any other jurisdiction. Although there was some evidence that Aaron and Michelle have some ties to New York, Aaron testified that he never has lived in New York. Some evidence supports the findings of the trial court on domicile, and for that reason, we cannot say that the trial court was without jurisdiction to grant a divorce in this case.

2. Next, we consider whether the trial court erred when it refused a stay. A few days before Aaron filed his petition for divorce, Michelle filed a petition for divorce in a New York court. Michelle contends that the Georgia trial court should have stayed its proceedings in favor of the New York proceedings for two reasons. First, she says, the New York court properly had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), OCGA § 19-9-40 et seq., to resolve questions concerning the custody of their children, and the UCCJEA absolutely required a stay of the Georgia proceedings, at least as to questions of child custody, until the New York court determined the proper forum in which to resolve those questions. Second, she argues, a trial court inherently has discretion to stay its proceedings in favor of earlier filed proceedings in another forum, and the interest of judicial economy compelled an exercise of that discretion in this case. We are not persuaded that the trial court erred when it refused to stay its proceedings in favor of New York.

(a) Generally speaking, a Georgia court cannot exercise jurisdiction to determine child custody "if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with [the UCCJEA],"[4] OCGA § 19-9-66 (a), and if a Georgia court finds "that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with [the UCCJEA]," the Georgia court must stay its proceedings and permit the foreign court to determine the most appropriate forum in which to resolve questions of child custody. OCGA § 19-9-66 (b). A court has "jurisdiction substantially in accordance with [the UCCJEA]" if it is a court of the state that "is the home state of the child on the date of the commencement of the proceeding" or "was the home state of the child within six months before the commencement of the proceeding and the child is absent from [the] state but a parent or person acting as a parent continues to live in [the] state." OCGA § 19-9-61 (a). See also *Bellew v. Larese*, 288 Ga. 495, 498 (706 SE2d 78) (2011) ("Under the UCCJEA, a court's subject matter jurisdiction to make an initial child custody determination is heavily dependent on the question of whether the court is of a state that is the child's 'home state.' " (Citations omitted)). The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." OCGA § 19-9-41 (7).

In this case, the record shows that Michelle and the children had lived in Georgia since 2000 and continued to live in Georgia until sometime after Michelle and Aaron filed their respective petitions for divorce. For that reason, Georgia was the "home state" of the children for the purposes of the UCCJEA, and New York was not. Consequently, the trial court below had jurisdiction to determine questions of child custody, and it was not required under the UCCJEA to stay its proceedings in favor of any proceedings in New York. See *Croft v. Croft*, 298 Ga. App. 303, 306-307 (1)-(2) (680 SE2d 150) (2009).

(b) A trial court has, as Michelle contends, "discretion to stay a Georgia proceeding pending the disposition of a prior pending action in another jurisdiction." *Flagg Energy Dev. Corp. v. General Motors Corp.*, 223 Ga. App. 259, 261 (2) (477 SE2d 402) (1996) (citations and

---

[4] The general rule notwithstanding, a Georgia court may exercise jurisdiction to decide child custody in certain emergency circumstances pursuant to OCGA § 19-9-64, and a Georgia court may exercise jurisdiction to decide child custody if the foreign court in which proceedings previously were commenced decides that Georgia is the more convenient forum. See OCGA § 19-9-66 (a).

punctuation omitted). See also *Bloomfield v. Liggett & Myers, Inc.*, 230 Ga. 484, 485 (198 SE2d 144) (1973) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (Citation and punctuation omitted)). That said, whether and to what extent a stay is warranted by the interest of judicial economy "calls for [an] exercise of judgment, which must weigh competing interests and maintain an even balance." *Bloomfield*, 230 Ga. at 485 (citation and punctuation omitted). Here, we see no abuse of discretion in the failure of the trial court to stay its proceedings. The proceedings in New York, though commenced first, were commenced only six days before the proceedings in Georgia, such that the New York proceedings had not progressed far by the time the Georgia proceedings were underway. That circumstance, along with the fact that the parties had lived in Georgia for ten years, that their marital residence was located in Georgia, that most of the marital property was located in Georgia, and that Georgia was the "home state" of the children for purposes of the UCCJEA, renders the decision of the trial court to proceed on the petition filed by Aaron a reasonable one.

3. We turn now to the contention that the trial court erred with respect to its division of marital property. As the finder of fact,[5] the trial court had "broad discretion to distribute marital property to assure that property accumulated during the marriage [was] fairly divided between the parties, and an award will be overturned only if it falls outside this discretion." *Pennington v. Pennington*, 291 Ga. 165, 168 (4) (a) (728 SE2d 230) (2012) (citations and punctuation omitted). As we have explained before,

> [a]n equitable division of marital property does not necessarily mean an equal division, and an award is not erroneous simply because one party receives a seemingly greater share of the marital property. The trial court has broad discretion to divide the parties' property upon consideration of all the relevant evidence.

*Hunter v. Hunter*, 289 Ga. 9, 10 (1) (709 SE2d 263) (2011) (citations and punctuation omitted). Among other things, a trial court may consider "the conduct of the parties, both during the marriage and with reference to the cause of the divorce," with respect to an equitable division of marital property. *Wood v. Wood*, 283 Ga. 8, 11 (5)

---

[5] The case was tried before the trial judge without the intervention of a jury.

(655 SE2d 611) (2008) (citation and punctuation omitted). We see no abuse of discretion in the division of marital property in this case.

Michelle complains that the trial court awarded most of the marital assets to Aaron, including his military retirement and the marital residence, and that it left her responsible for most of the substantial credit card debt that she and Aaron owed. We note, however, that the court made Aaron responsible for the debt owed on the marital residence, including the debt owed on a second mortgage that was obtained at the instance of Michelle. Moreover, the evidence shows that Michelle previously had received $15,000 from an early withdrawal from retirement and that she had incurred most of the credit card debt. Although Michelle points to evidence of misconduct on the part of Aaron and her own lack of education and opportunities for gainful employment, other evidence shows misconduct by Michelle and her extensive access to, and misuse of, his income. We also note that the trial court found that Michelle "is not a credible witness," and especially in light of that finding, we cannot merely rely on her "own testimony and [her] own interpretation of the evidence" in our review of the division of marital property. *Bloomfield v. Bloomfield*, 282 Ga. 108, 111 (2) (646 SE2d 207) (2007). Having reviewed the entire record, including the evidence concerning the marital residence, retirement, debt, and the conduct of the parties, we cannot say that the trial court abused its discretion with respect to the division of marital property. See *Pennington*, 291 Ga. at 168-169 (4) (a); *Hunter*, 289 Ga. at 10 (1); *Bloomfield*, 282 Ga. at 111 (2).

4. We next consider the contention that the trial court erred with respect to its award of child support to Michelle. The trial court ordered Aaron to pay $1,420 each month to Michelle for the support of the children, but in its calculation of child support, it deviated downward from the presumptive amount under the statutory guide-lines to account for life insurance and visitation-related travel expenses to be borne by Aaron. Michelle contends that the trial court failed to make sufficient findings to justify these deviations and that a life insurance deviation was inappropriate in any event because the trial court did not expressly order Aaron to maintain life insurance for the benefit of the children.[6] Michelle also argues that the trial court erred

---

[6] In addition, Michelle complains that the trial court also deviated downward for special child rearing expenses to be borne by Aaron, namely expenses related to soccer. Although the trial court considered soccer expenses, those were the only special expenses for child rearing, and they did not exceed seven percent of the basic child support obligation, as would have been required to warrant a deviation. See OCGA § 19-6-15 (i) (2) (J) (ii). Accordingly, the trial court did not actually deviate downward to account for these expenses, and it left blank the line designated on Schedule E of the Child Support Worksheet for allowable special expenses for

in its calculation of the gross income properly attributable to Aaron. We find no merit in the complaints about the visitation-related travel expenses and calculation of gross income, but we do find error with respect to the deviation for life insurance.

(a) To justify a deviation from the presumptive amount of child support, a court must make written findings to explain, among other things, "how application of the presumptive amount of child support would be unjust or inappropriate," "how the best interest of the children for whom support is being determined will be served by the deviation," and "how the . . . application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support." *Holloway v. Holloway*, 288 Ga. 147, 149 (1) (702 SE2d 132) (2010) (citations omitted). See also OCGA § 19-6-15 (c) (2) (E) (iii), (i) (1) (B). As our Court of Appeals has explained, "[t]hese qualitative determinations . . . are committed to the discretion of the court or jury." *Hamlin v. Ramey*, 291 Ga. App. 222, 224-225 (1) (661 SE2d 593) (2008) (footnote omitted). Accordingly, we "review any findings based on disputed facts or witness credibility under the clearly erroneous standard[,] and [we] review the decision to deviate, or not to deviate, from the presumptive amount of child support under the abuse of discretion standard." Id. at 225 (1) (footnote omitted). See also *Willis v. Willis*, 288 Ga. 577, 579 (1) (707 SE2d 344) (2011); *Jackson v. Irvin*, 316 Ga. App. 560, 562 (1) (730 SE2d 48) (2012).

In support of its deviations, the trial court in this case found that Michelle had the option to remain with the children in the marital home for which Aaron was financially responsible, but she chose instead to move to New York and incur unnecessary expenses. The trial court also found that Michelle was capable of working and that she could have moved back to the marital residence in Georgia, which had been vacant from June 2010 until the time of trial. In addition, the trial court found that Aaron would have the children during most holidays and much of the summer, and allowing the deviations would leave him with funds to cover expenses incurred in connection with those periods of visitation, including the interstate travel that obviously would be necessary to accomplish those visitations. In light of these findings, none of which appear clearly erroneous, we cannot say that the deviation for visitation-related travel expenses was an abuse of discretion. But we do not understand how these findings justify a

which a deviation is permitted. "Because there was no deviation for [special expenses for child rearing], written findings regarding that issue were not required." *Brogdon v. Brogdon*, 290 Ga. 618, 622 (5) (a) (723 SE2d 421) (2012) (citation omitted).

deviation for life insurance premiums. In the absence of express findings that shed light on that deviation, we cannot assess whether the evidence supports the deviation and whether the trial court abused its discretion with respect to that deviation. See *Brogdon v. Brogdon*, 290 Ga. 618, 625 (5) (b) (723 SE2d 421) (2012). The express findings required under OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B) "are mandatory to ensure that the best interests of the children are protected, and when any of the required findings are omitted, we have no choice" but to set aside the judgment below and remand for further proceedings.[7] *Walls v. Walls*, 291 Ga. 757, 761 (6) (732 SE2d 407) (2012) (citations and punctuation omitted). Because the trial court deviated from the presumptive amount of child support to account for life insurance, but failed to make all of the required findings, we must vacate the award of child support and remand for a redetermination of that award, with any deviation for life insurance to be supported by appropriate written findings.[8] See id. See also *Brogdon*, 290 Ga. at 625 (5) (b); *Turner v. Turner*, 285 Ga. 866, 867 (1) (684 SE2d 596) (2009).

(b) As noted above, Michelle also complains that the trial court deviated to account for expenses of life insurance without expressly directing Aaron to maintain life insurance for the benefit of the children. We have, however, already vacated the award of child support, and on remand, the trial court may or may not deviate again for life insurance. If it does deviate for life insurance, the court may clarify that it is, in fact, ordering Aaron to maintain life insurance for the benefit of the children. See OCGA §§ 19-6-15 (i) (2) (D), 19-6-34. See also *Simmons v. Simmons*, 288 Ga. 670, 672 (3) (706 SE2d 456) (2011). We note, however, that a deviation from the presumptive amount of child support for a particular expense may itself amount to an implicit order that the parent benefitting from the deviation pay that expense. See *Hendry v. Hendry*, 292 Ga. 1, 5 (2) (734 SE2d 46) (2012); *Floyd v. Floyd*, 291 Ga. 605, 610 (2) (732 SE2d 258) (2012).

---

[7] We acknowledge that the amount of the deviation for life insurance was only $27 per month. But, because the "[required] findings are designed to protect the interests of the child, not the divorcing spouses, reversal is required when findings are not made even when the amount of the deviation could be characterized as de minimis and even where the deviation favors the party complaining about it." *Walls v. Walls*, 291 Ga. 757, 761 (6) (732 SE2d 407) (2012) (citations and punctuation omitted).

[8] We take this opportunity to encourage the trial court, as well as other courts and lawyers, to follow the instruction above the spaces designated for these findings on Schedule E: "Important requirement about deviations – No Deviations are permitted under the law unless all three questions below . . . have been answered for *each* requested deviation." (Emphasis in original.) See *Brogdon*, 290 Ga. at 624 (5) (b).

(c) With respect to the calculation of gross income attributable to Aaron, Michelle argues that the trial court failed to count all income required by OCGA § 19-6-15 (f) (1) (E). Subparagraph (f) (1) (E) provides that, when a parent (such as Aaron) is an active-duty member of the Armed Forces, his income includes his base pay and drill pay, as well as any basic allowance for subsistence and housing, whether paid directly or received in kind. The trial court in this case properly determined that the gross income attributable to Aaron included $981 for his basic allowance for housing at the "without dependent" rate, as specified in subparagraph (f) (1) (E). As to other forms of military pay and allowances, Michelle points to testimony that Aaron received additional pay during deployment, including "hazardous duty pay, family separation, and tax free." That additional pay, however, apparently amounts to "special pay or incentive pay" that is excluded from gross income under subparagraph (f) (1) (E). See *Eldridge v. Eldridge*, 291 Ga. 762, 763 (1) (732 SE2d 411) (2012). And in any event, the record shows that Michelle received much of the additional pay that Aaron previously had earned and that the additional pay ceased when Aaron last returned from deployment.[9] We conclude that the record supports the calculation of gross income and that the trial court did not err with respect to that calculation. See id. (applying "clearly erroneous" or "any evidence" standard of review to calculation of gross income).

5. Finally, we consider whether the trial court erred with respect to a provision of the final decree that evidently was intended to enable Michelle to retain her health insurance. In that provision, the trial court ordered as follows:

RETIREMENT BENEFITS: [Aaron] is not yet eligible to retire, and he testified that he had no intention of retiring in six (6) months, when he is eligible to retire at 20 years of military service. However, he shall pay to [Michelle] the sum of $100.00 per month in order to allow [her] to be eligible to retain her health insurance benefits through Tri-Care [sic]. If [she] decides to retain those benefits, she will be responsible for paying the premium for her health insurance. This payment of $100.00 per month is not considered alimony, but a benefit to [Michelle] to assist her in maintaining her health benefits after the parties' divorce is final. It is not modifiable. [She] shall be responsible for all premiums, deductibles, and

---

[9] Michelle also mentions pay that Aaron received as a result of his second job, but that pay ceased a year-and-a-half before trial.

any other expenses for this benefit to apply[;] however, if the payments are not made and the insurance is allowed to lapse as a result, the Benefit shall cease, and the $100.00 per month shall also cease immediately.

Michelle argues that this $100 monthly obligation is completely ineffective and internally contradictory because the trial court failed to award her a survivor benefit plan (SBP) and that she, therefore, is not eligible for military health care benefits. Regardless of the intent of the trial court and the award of any SBP, however, Michelle appears to be ineligible as a matter of federal law for the comprehensive military-managed health care coverage known as "Tricare" because, if for no other reason, the parties were not married for at least 20 years. See 10 USC § 1072 (2) (F), (H); 32 CFR § 199.3 (b) (2) (i) (F) (1) & (b) (2) (i) (F) (2) (iii); see also William J. Camp, *Health Care Options for Former Military Spouses: Tricare and the Continued Health Care Benefit Program (CHCBP)*, 43 Fam. L. Q. 227, 237 (II) (C), 238-239 (II) (D) (2009). Accordingly, it was impossible for Michelle to meet the specific condition that the trial court imposed for entitlement to the $100 monthly allowance to assist her in maintaining health care benefits. The trial court may have meant to refer to Michelle's retention of health care benefits pursuant to the Continued Health Care Benefit Program (CHCBP), for which she apparently is eligible. See 10 USC § 1078a (b) (3); 32 CFR § 199.20 (d) (1) (iii); see also Camp, 43 Fam. L. Q. at 256-257 (III) (A), (B), 271 (III) (J). And if so, the court may or may not have considered that such benefits would be limited to 36 months unless, among other things, Michelle is receiving or at some point is entitled to receive a portion of military retired pay or an SBP annuity, either by court order or agreement. See 10 USC § 1078a (g) (1) (C) & (g) (4); 32 CFR § 199.20 (d) (7) (i) (D); see also Camp, 43 Fam. L. Q. at 271-275 (III) (K). See generally *Hipps v. Hipps*, 278 Ga. 49 (597 SE2d 359) (2004) (discussing an award of survivor's benefits available as a result of military service). Because the health care provision in the trial court's order is contradictory on its face, and because we cannot discern from it the actual intent of the trial court, that part of the decree must be vacated and the case remanded for correction and clarification by the trial court. See *Dupree v. Dupree*, 287 Ga. 319, 320 (2) (695 SE2d 628) (2010) (citation omitted).

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

DECIDED MARCH 25, 2013.

*Hogue & Hogue, Susan D. Raymond, John C. Wilson*, for appellant.

*A. James Rockefeller*, for appellee.