S13F0152. DRIVER v. DRIVER.
(741 SE2d 631)

NAHMIAS, Justice.

In this divorce case, appellant Randall Craig Driver (Husband) contends that the trial court erred in its equitable division of the marital property, in its lump-sum alimony award to appellee Andria Elizabeth Driver (Wife), in making certain findings that affected the equitable division and the alimony award, and in denying his motion to reopen the proof. We affirm.

1. On December 10, 2008, after 20 years of marriage, Husband filed for divorce. Wife filed an answer and a counterclaim seeking child custody, child support, alimony, equitable division of the marital property, and attorney fees. On August 9, 2011, the trial court conducted a bench trial, at which both parties testified. On January 20, 2012, Husband filed a motion to reopen the proof. On March 7, 2012, the trial court entered a detailed final judgment and decree of divorce.

The marital estate consisted mainly of commercial property holdings and corporate entities in which Husband had an interest,

along with the associated liabilities. In equitably dividing the marital property and awarding alimony, the trial court found that Husband had obscured his financial status by constantly maneuvering properties and assets and manipulating financial information. The decree noted that on April 1, 2008, Husband filed a financial statement indicating that his net worth exceeded $11.3 million, but by September 30, 2009, his net worth based on the same properties had allegedly fallen to $2.6 million. The court found the evidence Husband offered in support of this claim to be "very troubling." The court added that Husband had cross-collateralized the properties, thereby tying them all together and making an award of property in kind insufficient. The court found that Husband was capable of earning at least $150,000 per year. The divorce decree ultimately awarded Wife the sum of $500,000 as equitable division of the marital property, to be paid in two equal installments, and $200,000 in lump-sum alimony, to be paid in monthly installments of $3,500 for the next five years.[1]

On March 23, 2012, Husband filed a motion for new trial, and on March 27, he filed a motion to amend and/or make additional findings pursuant to OCGA § 9-11-52. On July 11, 2012, the trial court denied those two motions as well as Husband's motion to reopen the proof. We granted Husband's application for discretionary appeal under Supreme Court Rule 34 (4), and he timely appealed.

2. Husband contends first that the trial court failed to divide the marital property equitably. He complains that the court failed to determine the liabilities associated with the marital assets and made no finding as to the value of the marital estate as a whole, making it impracticable to evaluate whether the property division was equitable.

In a divorce case,

the factfinder possesses broad discretion to distribute marital property to assure that property accumulated during the marriage is fairly divided between the parties. While each spouse is entitled to an allocation of the marital property based upon his or her equitable interest therein, an award is not erroneous simply because one party receives a seemingly

---

[1] The decree contains an obvious discrepancy. Payment of $3,500 per month for five years (60 months) yields a total of $210,000 in alimony, not $200,000. However, Husband does not enumerate this point as error, and we leave the issue to the trial court to resolve if it ever is disputed. The decree also awarded Wife $1,405.76 in monthly child support while their younger child remained in high school.

greater share of the marital property. An equitable division of marital property does not necessarily mean an equal division.

*Bloomfield v. Bloomfield*, 282 Ga. 108, 110-111 (646 SE2d 207) (2007) (citations and punctuation omitted). The trial court's division of marital property will be upheld as long as it falls within the court's broad discretion, see *Mathis v. Mathis*, 281 Ga. 865, 866 (642 SE2d 832) (2007), and the court's factual findings are reviewed using the " 'any evidence' rule, under which a finding . . . supported by any evidence must be upheld," *Bloomfield*, 282 Ga. at 108 (citation and punctuation omitted).

Here, the trial court's conclusions that an award of property in kind would not provide Wife with a sufficiently equitable division of the marital property, and that a sum of $500,000 was appropriate as her equitable share, were based on the court's findings of fact, were supported by evidence in the record, and were not an abuse of discretion. There is record evidence, for example, to support the findings that Husband had cross-collateralized the commercial properties that constituted most of the marital estate; that his financial status was unclear due to his maneuvering of assets and manipulation of figures; and that his assertions about his income and the value of the commercial properties were supported only by self-serving documents that he prepared or had prepared by others at his direction.

Moreover, we see no error in the trial court's failure to make a precise finding of the total value of the marital estate before determining an equitable division. Husband cites no authority requiring such a finding, and trial courts generally are not required to make findings of fact in nonjury trials unless requested by one of the parties prior to entry of the judgment. See OCGA § 9-11-52 (a); *Mathis*, 281 Ga. at 867. Husband did not request findings of fact until his post-judgment motion to amend and/or make additional findings. At that point, the trial court had discretion to make additional findings but was not obligated to do so. See OCGA § 9-11-52 (c) (providing that "[u]pon motion made not later than 20 days after entry of judgment, the court *may* make . . . findings" (emphasis added)); *Hunter v. Hunter*, 289 Ga. 9, 12 (709 SE2d 263) (2011). We cannot say that the trial court abused its discretion in not making the specific total-marital-estate-value finding that Husband belatedly requested, given the other findings the court made in the decree and the evidence in the record. See *Hunter*, 289 Ga. at 12.

3. Husband next contends that the trial court erred in awarding Wife $200,000 in lump-sum alimony, to be paid in monthly installments of $3,500 for five years, without considering Husband's ability to pay. Husband cites OCGA § 19-6-1, which says that "alimony is authorized, but is not required, to be awarded to either party in accordance with the needs of the party and the ability of the other party to pay." We have said that among the factors to be considered in determining the amount of alimony, if any, are "the financial resources of each party, including their separate estates, earning capacity, and their fixed liabilities." *Duncan v. Duncan*, 262 Ga. 872, 873 (426 SE2d 857) (1993).

The trial court found that Husband was capable of earning a minimum of $150,000 per year based on the more than $660,000 in gross receipts from his income-producing properties during each of the two previous years as well as his monthly income of $5,500 as a consultant for the bank that was the primary mortgage holder of his commercial properties. The court made the lump-sum alimony award for the purpose of assisting Wife in completing her education and becoming financially independent, after finding that she had been forced to leave the marital residence due to its foreclosure, that she worked part-time as a waitress and was enrolled in college, and that she struggled with tuition payments as well as day-to-day living expenses. The court noted that Husband resided with his girlfriend, paid virtually no living expenses, and did not appear to suffer financially.

As with equitable division, "fact-finders are given wide latitude in fixing the amount of alimony . . . under the evidence as disclosed by the record and all the facts and circumstances of the case." *Vereen v. Vereen*, 284 Ga. 755, 756 (670 SE2d 402) (2008). The record contains some evidence supporting the court's finding that Husband could pay the alimony awarded and that Wife needed it. Husband's additional argument that the lack of a specific finding as to Wife's income made a determination of her need for alimony impossible is without merit. He did not request such a finding before the judgment, and in any event, the findings made in the decree make clear that Wife's income was comparatively low and her financial status precarious.

4. Husband claims that the divorce decree contains numerous incorrect findings that affected the division of the marital estate and the determination of the alimony award. Most of the findings that Husband disputes are supported by some evidence in the record,

which is all that is required.[2] See *Bloomfield*, 282 Ga. at 108.

Only one of the findings about which Husband complains — the court's statement that his 2010 "tax return" showed gross receipts of $661,700 — was clearly erroneous, because his 2010 return had not yet been prepared at the time of the bench trial. The record shows that the $661,700 amount actually was Husband's gross deposits in 2010 as shown by bank statements for that year. Thus, despite misidentifying the documentary source of its figure, the trial court's finding of Husband's gross revenues for 2010 is supported by the record, and the error therefore was harmless.

Husband's claim that the trial court erred in finding that there was "no documentary evidence" that his real estate expenses exceeded his revenues misconstrues the divorce decree. While the decree's statement that Husband "offered no documentary evidence" of his financial straits could appear inaccurate if read in isolation, the next sentence explains that "[t]he only documents offered by [Husband] were self-serving documents he prepared or had prepared by others at his direction," and elsewhere the court found Husband to have manipulated the financial evidence. When read in context, it is clear that the trial court did not overlook Husband's documentary evidence; the court just found that evidence not to be credible.

Finally, Husband asserts that the trial court erred by ignoring evidence that his net income after expenses on all of his properties was negative and by considering only the gross receipts on the commercial properties without considering the expenses and debt service that Husband was required to pay in connection with the properties. But we have no reason to conclude that the court's assessment of Husband's net worth and cash flow was clearly erroneous, rather than based on the court's consideration as the factfinder of all the evidence presented. The decree references the documentary evidence of Husband's financial situation — including his tax returns, salary information, and financial statements — and the court's determinations of the value of the marital estate and Husband's earning potential presumably took this information as well as all of the testimony into account. See *Connell v. Houser*, 189 Ga. App.

---

[2] These include the findings that Husband constantly manipulated and maneuvered properties, assets, and figures; that he received $192,475 in rental income from one of his properties, the DP Marina, but that he did not testify as to the amount he paid the DP Marina mortgage holder or any other bank or lending institution; that his real property was re-evaluated by him, at his direction, or by individuals selected by Husband and his banking institutions; that Wife was forced to leave the marital residence due to its foreclosure; and that his bank was not going to foreclose on the properties.

158, 158 (375 SE2d 136) (1988) ("Absent any indication to the contrary, we must presume that the [trial] court considered all the evidence before it.").

5. On January 9, 2012, five months after the bench trial, Husband sent the trial court a "Notice of Filing," attaching unsworn exhibits allegedly showing that the bank was foreclosing on many of his commercial properties. The court promptly sent a letter to counsel for both parties, advising that it had received Husband's "packet of information" but had not reviewed the documents because "they were not tendered into evidence at the final hearing." The letter offered the parties three specific dates in January and February on which they could schedule a hearing as to whether the evidence should be reopened and the alleged new evidence considered by the court, directing the parties to "notify [the court's] office if a new hearing is required." On January 20, Husband filed his motion to reopen the proof along with a notice of hearing setting the matter for a hearing date that was two weeks after the latest of the three dates listed in the trial court's letter. Husband did not provide a copy of these filings to the court or Wife. The court entered the final decree on March 7, and on July 11 the court entered an order denying the motion to reopen the proof and Husband's other post-trial motions.

Husband argues that the trial court erred in denying his motion to reopen the proof to consider evidence that his financial status had changed for the worse since the trial, and in issuing the divorce decree without considering that additional evidence. "It is generally not error to refuse a reopening of the case after both parties have closed, and the trial court's decision to deny a party permission will not be reversed absent a manifest abuse of discretion." *Bruner v. Bruner*, 240 Ga. 159, 160 (240 SE2d 48) (1977).

The trial court here did not abuse its discretion in declining to reopen the proof. The court correctly determined that Husband had waived his right to a hearing on the motion by failing to request a hearing on one of the three dates the court had offered and failing to properly notify the court and Wife of his motion. Moreover, the court eventually denied Husband's motion on the merits after holding a hearing on all of his post-trial motions on April 4, 2012. There is no transcript of that hearing in the record, however, nor is there any other indication in the record that Husband ever properly proffered his new documents as competent evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 15, 2013.

*Grant, Konvalinka & Harrison, John P. Konvalinka, Jillyn M. O'Shaughnessy*, for appellant.

*Spicer, Flynn & Rudstrom, Ben T. Hickey, Jr.*, for appellee.