S13F0408. ZEKSER v. ZEKSER.
(744 SE2d 698)

BLACKWELL, Justice.

Michael and Marlene Zekser were married in 1993, and they were divorced 18 years later. Marlene appeals from the final decree of divorce, contending that the division of the marital assets and debts was inequitable. We find no error in the division of the assets and debts, and we affirm the final decree.

---

1. By its final decree, the trial court awarded the marital residence to Marlene,[1] as well as a sport-utility vehicle[2] and her retirement account.[3] To Michael, the trial court awarded his consulting business[4] and his own retirement account.[5] The trial court also required Marlene to pay $102,612 to Michael, which represented approximately half of their equity in the marital residence. In addition, the trial court directed that Marlene alone would have full responsibility for their indebtedness on the marital residence and on student loans that financed her law school education.[6] This division was inequitable,[7] Marlene contends, especially because Michael ought to share in the obligation to repay the indebtedness for her law school education, and because he treated her cruelly during their marriage.

As we have explained before, an equitable division of marital property is not necessarily an equal division, but a fair one. *Driver v. Driver*, 292 Ga. 800, 801-802 (2) (741 SE2d 631) (2013). See also *Black v. Black*, 292 Ga. 691, 695 (3) (740 SE2d 613) (2013); *Pennington v. Pennington*, 291 Ga. 165, 168 (4) (a) (728 SE2d 230) (2012). When determining the division of marital property, the trier of fact should consider all of the relevant circumstances, *Morrow v. Morrow*, 272 Ga. 557, 558 (532 SE2d 672) (2000), including "the conduct of the parties, both during the marriage and with reference to the cause of the divorce." *Black*, 292 Ga. at 695 (3) (citation and punctuation omitted). See also *Wood v. Wood*, 283 Ga. 8, 11 (5) (655 SE2d 611) (2008); *Bloomfield v. Bloomfield*, 282 Ga. 108, 111 (2) (646 SE2d 207) (2007). The division of marital property is committed to the discretion of the trier of fact, and its discretion in this respect is broad. See *Driver*, 292 Ga. at 801 (2). See also *Black*, 292 Ga. at 695 (3); *Pennington*, 291 Ga. at 168 (4) (a); *Shaw v. Shaw*, 290 Ga. 354, 356 (3) (720 SE2d 614) (2012). We find no abuse of that broad discretion in this case.

With respect to the indebtedness for law school, the trial court found that Michael advised against Marlene attending law school for

---

[1] The marital residence had an appraised value of $405,000.

[2] The sport-utility vehicle was worth about $21,000.

[3] Her retirement account was worth about $23,000.

[4] The trial court found that the consulting business had "no intrinsic value," insofar as the business only had one client, it only had Michael as its sole employee, and its income represented merely the fruits of his individual labor.

[5] His retirement account was worth about $79,000.

[6] Marlene owed about $130,000 for her law school education. Marlene enrolled in law school in 2005 and graduated four years later.

[7] Besides the marital assets and debt discussed above, we also note that the trial court determined that a trust fund worth about $100,000 was the separate property of Marlene and was not, therefore, subject to equitable division.

financial reasons[8] and that her attending law school did, in fact, drain their financial resources.[9] In addition, the trial court found that attending law school distracted Marlene from her obligations to her family, inasmuch as she "spent long hours studying, joined a fraternity, and volunteered for projects at the law school."[10] Attending law school also distracted Marlene in other ways, as the trial court found that Marlene "found playmates at the law school with [whom] she apparently had affairs."[11] The trial court noted as well that the marriage ended close in time to Marlene graduating from law school. Based on these things, the trial court found that Marlene attending law school "did not advance the family unit but will advance [her] and the children in the future."[12] Upon our review of the entire record, we are satisfied that these findings are not clearly erroneous, and we see no abuse of discretion in the trial court assigning the entirety of the indebtedness for law school to Marlene.

With respect to the allegation of cruel treatment, we find no reason to believe, as Marlene urges, that the trial court did not consider all of the relevant circumstances, even if it did not mention them all explicitly in its decree. As the trier of fact, the trial court was in the best position to assess the credibility of Michael and Marlene and to determine if Michael had, in fact, treated her cruelly, as she claimed. See *Bloomfield*, 282 Ga. at 111 (2) ("[T]his Court must give deference to the trial court's factual findings as well as its determination of credibility.") (citation omitted). On appeal, we do not reweigh the facts, *Wood*, 283 Ga. at 9 (1) (a), and in this case, we accept that the trial court found no cruel treatment on the part of Michael. Given the findings of the trial court, and given the deference that we owe the trial court, we see no abuse of discretion in the way in which it equitably divided the marital assets and debts.

---

[8] Although Michael eventually relented to Marlene attending law school, he initially opposed it, he testified, because the family could not afford it, and Marlene herself testified that Michael was opposed to her attending law school and "any of the activities that had anything to do with it."

[9] Besides the accumulation of $130,000 in debt, Michael testified that Marlene dramatically increased her spending after entering law school, "almost empt[ying] our bank account."

[10] Michael testified that, although Marlene had promised to continue to care for their children when she enrolled in law school, that promise "went out the window pretty quickly," leaving Michael not only as the primary breadwinner for the family, but also the primary caretaker for the children.

[11] Marlene admitted that she was unfaithful to Michael, and the record contains ample additional support for the finding of her infidelities.

[12] In addition, the trial court's finding that some of Marlene's law school debt "may be forgiven in the future" was based on Marlene's testimony that she was eligible to enroll in a loan forgiveness program and that her loans may be forgiven if she remains employed in public service for ten years.

2. In her briefs on appeal, Marlene also contends that the trial court erred with respect to its determination of the child support that Michael owes. But in her application for discretionary review, see OCGA § 5-6-35 (a) (2), Marlene said nothing at all about child support. An application for discretionary review must "enumerat[e] the errors to be urged on appeal," OCGA § 5-6-35 (b), and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application.[13] See Christopher J. McFadden et al., Georgia Appellate Practice § 13:15 (2012 ed.) ("The issues on appeal are limited by the errors enumerated in the application for discretionary appeal."). On occasion, we have limited the scope of discretionary review even further, granting an application for discretionary review only as to some of the errors enumerated therein, for instance, and directing that briefs should be submitted only upon those specified claims of error.[14] In cases in which an appellant has attempted to raise additional errors beyond the limited scope of discretionary review — whether limited only by the enumeration of errors in the application or limited further by the express direction of the Court — we have declined to consider those additional claims of error. See, e.g., *Chung-A-On v. Drury*, 276 Ga. 558, 559, n. 8 (580 SE2d 229) (2003); *Franz v. Franz*, 268 Ga. 465, 466 (2) (490 SE2d 377) (1997); *Grim v. Grim*, 268 Ga. 2, 3 (2) (486 SE2d 27) (1997). By failing

---

[13] We emphasize that the statute requires the application to enumerate "*the errors* to be urged on appeal," OCGA § 5-6-35 (b) (emphasis supplied), not just "some" or "most" of the errors to be urged on appeal. By the way, nothing about this limitation upon the scope of discretionary review is inconsistent with OCGA § 5-6-35 (g), which provides that, when an application for discretionary review has been granted, and when a notice of appeal has been timely filed, "[t]he procedure thereafter shall be the same as in other appeals." In any appeal, the appellant may raise any claims of error that have been adequately preserved for appellate review. But because OCGA § 5-6-35 (b) requires that "the errors to be urged on appeal" be enumerated in the application, when an applicant fails to enumerate a claim of error in her application, she forfeits appellate review of that claim. And having failed to preserve that claim for appellate review, she cannot properly raise it in the appeal that follows the grant of discretionary review, just as in any other appeal. We also note that nothing about this limitation is inconsistent with the cases permitting an expansion of the issues on appeal by way of a cross-appeal. See, e.g., *Friedman v. Friedman*, 259 Ga. 530, 531 (1) (384 SE2d 641) (1989) (cross-appeal may expand issues on appeal following grant of interlocutory review), disapproved on other grounds, *Duckworth v. State*, 268 Ga. 566, 569 (1), n. 11 (492 SE2d 201) (1997). See also *Georgia Dept. of Transp. v. Strickland*, 279 Ga. App. 753, 756 (3) (632 SE2d 416) (2006). Nothing is required of a cross-appellant in response to an application for discretionary review, and the cross-appeal follows the grant of discretionary review and the timely filing of a notice of appeal, at which time, "[t]he procedure . . . shall be the same as in other appeals." OCGA § 5-6-35 (g).

[14] When we grant discretionary review, we sometimes identify a specific claim of error in which we especially are interested, but we do not direct the parties to file briefs only upon that issue. In such cases, we have not limited the scope of the discretionary review more narrowly than the enumeration of errors in the application. When we do limit the scope of review more narrowly, we do so explicitly.

to complain in her application for discretionary review of the provisions of the decree concerning child support, Marlene has forfeited any appellate review of those provisions, and we decline to consider her additional enumeration of error.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 17, 2013 —
RECONSIDERATION DENIED JULY 11, 2013.

*Jan McKinney, Zachary R. Stepp, Alan Mullinax,* for appellant.
*Bovis, Kyle, Burch & Medlin, Winfield L. Pollidore, Erin S. Stone,* for appellee.