**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 2, 2023**

# In the Court of Appeals of Georgia

A23A0297. VELAZQUEZ v. PEREZ.

MILLER, Presiding Judge.

This appeal arises from protracted and contentious divorce proceedings between Joana Estrada Velazquez and Alejandro Rojas Perez. The wife appeals from the final judgment and decree of divorce, arguing that (1) the trial court erred in making factual findings which were not supported by the evidence; (2) the trial court relied on erroneous findings when entering discretionary awards and dividing the marital debt; (3) the trial court abused its discretion when equitably dividing the marital assets; and (4) the trial court abused its discretion when awarding attorney fees and expert witness fees. We affirm the judgment of divorce, the division of the marital assets, and the trial court's decisions on the discretionary and fee awards, but we conclude that the trial court erred in some of its findings on the allocation of the

parties' debts, and therefore we reverse solely that portion of the judgment, and we remand this case for the trial court to reallocate the parties' debts.

In an appeal from a divorce proceeding, "[w]e review questions of law de novo, and the trial court's rulings on the division of assets [and] attorney fees . . . for an abuse of discretion. The court's factual findings are reviewed using the 'any evidence' rule, under which a finding supported by any evidence must be upheld." (Citations and punctuation omitted.) *Johnson v. Johnson*, 358 Ga. App. 638, 639 (856 SE2d 17) (2021). "The division of marital property is committed to the discretion of the trier of fact, and its discretion in this respect is broad." *Zekser v. Zekser*, 293 Ga. 366, 367 (1) (744 SE2d 698) (2013).

The parties were married in March 1999. Three children were born of the marriage, two of whom were minors at the time of the parties' divorce. During the marriage, the husband established Georgia Commercial Drywall and Acoustic, LLC, a drywall business that provided labor for contractors and that he operated with a partner. Although the wife periodically worked outside the home, she was primarily a homemaker.

In 2020, the husband filed a complaint for divorce. The wife answered and counterclaimed, seeking primary custody of the minor children, child support, spousal

support, and attorney fees. Following a lengthy bench trial, the trial court entered a final judgment and decree of divorce. The trial court divided the parties' assets and debts and awarded them joint legal custody of the minor children, with the wife retaining primary physical custody. The husband was ordered to pay child support, spousal support, and the fees incurred for the wife's expert witness. We granted the wife's application for discretionary appeal, and this appeal followed.[1]

1. First, in two related claims, the wife argues that the evidence does not support the finding that the husband's gross monthly income was $7,227 and that the trial court abused its discretion by relying on this erroneous amount in awarding child support and spousal support. Although the wife implies that the imputed income amount should have been higher than $7,227, the trial court's finding on the husband's imputed income is supported by some evidence, and therefore the court did not err.

> When establishing the amount of child support, if a parent fails to produce reliable evidence of income, . . . gross income for the current year may be imputed. When imputing income, the court . . . shall take into account the specific circumstances of the parent to the extent

---

[1] We address the wife's arguments in a different order from that presented in her appellate brief.

known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

OCGA § 19-6-15 (f) (4) (A). In the absence of any mathematical formula, fact-finders are given a wide latitude in setting the amount of spousal support and child support, and they are to use their experience as enlightened persons in judging the amount necessary for support under the evidence and all the facts and circumstances of the case. *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005).[2] We also emphasize that "[t]he trial court sat as finder of fact, and the determination of income frequently involves resolving conflicts in evidence." *Alejandro v. Alejandro*, 282 Ga. 453, 455 (6) (651 SE2d 62) (2007). When sitting as the fact-finder, the trial court determines whether a party's own representations regarding his income are credible, and we will not disturb the trial court's factual findings in this regard if there is any

[2] The wife is correct that, despite the trial court's use of the word "temporary" in the final judgment, the court actually entered an award of permanent spousal support. See *Langley v. Langley*, 279 Ga. 374, 375 (1) (613 SE2d 614) (2005) (temporary spousal support is intended to meet the exigencies arising from a pending divorce proceeding).

4

evidence to support them. *Daniel v. Daniel*, 358 Ga. App. 880, 886 (1) (b) (856 SE2d 452) (2021).

Preliminarily, we acknowledge that the trial court was faced with a herculean task in imputing the husband's monthly income because he did not earn a fixed salary; the business's performance fluctuated each year; and the record contains thousands of pages of tax documents and bank records. Turning to the record, the husband was a salaried employee of the business, and he only received distributions if there was "any money left" after the business covered its expenses. His domestic relations financial affidavit indicated a gross monthly income of $7,227.25. He explained that this amount was his average monthly income for the previous five years and that, from 2016 to 2017, the company was still newly formed and yielded less profits. This testimony finds some support in the record, as the husband's K-1 Schedule documents show that his annual share of the business income for these first two years was $20,477 and $18,608, respectively.[3] The husband's personal tax forms show that his income for 2018 was $81,259. In 2019, his income increased to $146,697, but it then decreased in 2020 to approximately $58,000. Even in the

_____

[3] "The K-1 Schedule determines the deductions or income that each partner in a business may state on his return after the business returns are completed." *Appling v. Tatum*, 295 Ga. App. 78, 80 (2) (670 SE2d 795) (2008).

highest grossing year of the business, most of the revenue was used to satisfy business expenses. Additionally, the husband testified that the COVID-19 pandemic had caused business to decline.

According to the final judgment, the trial court considered the testimony and evidence on the husband's income historically, as well as the tax returns, IRS records, and bank statements that are contained in the record. In light of the "evidence and giving the appropriate deference to the trial court's findings of fact and its credibility determinations, we cannot say the trial court's findings were clearly erroneous, as the income level attributed to [the] husband was within the range of evidence provided to the trial court." *Autrey v. Autrey*, 288 Ga. 283, 285 (2) (702 SE2d 878) (2010). See also *Breedlove v. Breedlove*, 293 Ga. 567, 568 (748 SE2d 445) (2013) (factfinder was "authorized to weigh the evidence of gross income as it saw fit"). Additionally, because there was some evidence supporting the trial court's finding on the husband's imputed income, we necessarily reject the wife's argument that the trial court used an erroneous income amount when determining child support and spousal support.[4]

[4] Although the wife argues that the trial court failed to make specific findings when awarding spousal support, "[t]he trial court was not required to make findings of fact unless specifically requested by the parties prior to the judgment[.]" *Williams v. Williams*, 362 Ga. App. 839, 845 (3) (870 SE2d 462) (2022). Our review of the record shows no such request, and the wife does not claim that she requested findings.

2. The wife next argues that the evidence does not support the trial court's finding on the historical income of the business. Because the trial court's findings on this issue are supported by some evidence, we reject this argument.

The trial court determined that the business "had [a] total income of roughly $550,000 in 2018 and roughly $12,000 in 2020[,]" and these amounts are within the range of the evidence. Although the *gross* income for the business was approximately $4.1 million in 2018, there was evidence showing that the income left after various deductions was only $318,347. Similarly, while the business grossed approximately $4.6 million in 2020, there was evidence that the business actually operated at a loss that year, in the amount of $10,134. The business's accountant plainly testified that, in 2020, the business was "actually negative. There [were] no net earnings. There was no income." Again, the income attributed to the business for these two years falls within the range of evidence presented. That being so, the trial court's findings are not clearly erroneous, and we are not at liberty to disturb them.

In her appellate briefs, the wife argues at length that the husband's tax records were incomplete, and she cites to her forensic accounting expert's testimony that there were errors in various tax returns. Conversely, the husband's accountant emphasized that the business had various deductions that were accounted for in the

preparation of the yearly taxes. When tabulating the business operation expenses, she "pull[ed] all the checks" and categorized them, and "confirmed . . . everything that came in[.]" She further testified that "every single deduction that went out [was] confirmed through the bank."[5] This Court does not reweigh the facts on appeal. *Zekser*, supra, 293 Ga. at 368 (1). Weighing the conflicting evidence was the trial court's prerogative as the factfinder, and because the court's findings are supported by the record, we must uphold them. Accordingly, this enumeration of error is unavailing.

3. Next, the wife contends that there was no evidence supporting the trial court's finding that the business suffered financially due to the COVID-19 pandemic. We disagree.

As discussed above, the business's accountant testified that the business operated at a loss in 2020, which was reflected in the tax records for that year. We glean from her testimony that she attributed some of these losses to the pandemic. She also testified that, as of the time of trial in November 2021, the expenses for the business were surpassing its earnings. The husband confirmed that since the

---

[5] To the extent that the wife claims that the tax records were incorrect because they did not account for various other business accounts, the wife's expert did not offer any such testimony when offering her opinion on the tax returns.

pandemic began, business was "down" because there were shortages in construction materials. As to the business's operation status, there was extensive evidence that the husband's business partner had left the partnership and started a new business venture. The husband testified that he was not able to seek work on his own, that he would be unable to keep the business's clients without his business partner, and that he intended to seek alternative employment. Accordingly, the trial court did not err in concluding that the business had been negatively impacted by the pandemic and was not operational at the time of the divorce, and we uphold these findings.[6]

4. The wife next contends that the evidence does not support the finding that the business lacked physical property that could be equitably divided between the parties. Specifically, she claims that the business owned six vehicles; that the bank records associated with the business showed funds available for division; and that the trial court ignored the husband's "deliberate effort" to diminish the value of the business. We conclude that the trial court committed no clear error in finding that the business lacked physical property that was available for equitable division.

[6] The wife argues that, because the trial court relied on erroneous findings on the business's income and its loss of value due to the pandemic, the court inherently abused its discretion when making the award on the equitable distribution of the business. As discussed, however, the trial court's findings were not clearly erroneous, so this claim necessarily fails.

(a) "The party claiming a right, including property division, has the burden of proof to establish that right." (Citation omitted.) *Southerland v. Southerland*, 278 Ga. 188, 189 (1) (598 SE2d 442) (2004). First, the wife's own expert testified that the vehicles were purchased with money from personal bank accounts and that some of the vehicles were in the parties' names. Indeed, some of these cars were purchased for the wife and the parties' children. The wife fails to identify which vehicles belonged to the business, if any, or that they were available for equitable distribution.[7]

(b) Second, we are unpersuaded by the wife's claim that there were business accounts which contained funds available for distribution.

We first note that, in making this argument, the wife cites generally to Exhibit 7 in the record. This exhibit spans three volumes and 3000 pages, and it contains information for numerous bank accounts, dating back several years. The wife offers no page citations to guide the Court, nor does she identify which specific accounts she is referencing. "Reference to an electronic record should be indicated by the volume number of the electronic record and the PDF page number within that

---

[7] The trial court allocated five vehicles in the possession of the parties and their children.

volume[.]" Court of Appeals Rule 25 (d) (2). Although we have reviewed the exhibit, it is not our job to cull the record on a party's behalf. So if we have failed to locate any specific evidence in support of this enumeration, the responsibility rests with counsel. *Reid v. Georgia Bldg. Auth.*, 283 Ga. App. 413 (641 SE2d 642) (2007).

Our examination of the record shows two bank accounts which were open around the time of the trial and which were addressed to the business. As of the end of October 2021, these accounts contained closing balances of $2,070 and $3,937.[8] Significantly, however, the record also shows that, at the time of trial in 2021, the business was operating at a loss of $31,000. Considering that the business's losses outweighed its cash balance for the same general time period, the trial court committed no clear error when it found that there were no funds available for distribution between the parties.

(c) Third, we address the wife's claim that the husband set out to affect the value of the business by planning to close it and by transferring marital funds into business accounts and co-mingling both sets of assets.

---

[8] A third account addressed to the business was closed in July 2021, with a closing balance of $0.

11

At the outset, we observe that this portion of the enumeration contains no record citations supporting the wife's arguments. See Court of Appeals Rule 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript."). Thus, we address the arguments only insofar as they appear to correspond with the record citations in the statement of facts (as best as we can discern), and we will not search the record for additional facts. *In the Interest of N. C.*, 363 Ga. App. 398, 404 (2) (870 SE2d 569) (2022); *Luong v. Tran*, 280 Ga. App. 15, 16 (1) (633 SE2d 797) (2006).

Turning to the wife's claims, we determine that the record does not support the contention that the husband planned to close the business in an intentional attempt to affect its value. Instead, he testified that the impending closure was due to his business partner's departure from the partnership and his inability to work on his own. As to the transfer of marital funds into the business accounts, the husband confirmed that he made two transfers from personal accounts into business accounts, but he explained that these monies actually belonged to the business.

In short, there is some evidence supporting the trial court's ruling that the business lacked physical property subject to equitable division, and the wife has failed to demonstrate that this factual finding was clearly erroneous.

5. The wife next argues that the trial court abused its discretion when making the awards on attorney fees and expert witness fees because the husband's financial circumstances were more favorable than the trial court found them to be. The trial court did not abuse its discretion on this issue.

> OCGA § 19-6-2 (a)
>
> authorizes the trial court in a divorce action to exercise its sound discretion and, after considering the financial circumstances of the parties, to award attorney fees as necessary to ensure the effective representation of both parties. A trial court's decision whether to award attorney fees pursuant to OCGA § 19-6-2 is a matter within the discretion of the trial court, and the exercise of that discretion will not be reversed unless manifestly or flagrantly abused.

(Citations and punctuation omitted.) *Hoard v. Beveridge*, 298 Ga. 728, 730 (2) (783 SE2d 629) (2016). "The term 'financial circumstances' is not defined in the statute, and there is no statutory limitation on the type of evidence the trial court may consider when deciding whether to award fees and in what amount under OCGA § 19-6-2." *Winchell v. Winchell*, 352 Ga. App. 306, 311 (2) (835 SE2d 6) (2019).

In the final judgment, the trial court ordered each party to pay their individual attorney fees. The court indicated that it had considered the wife's request for attorney fees under the statute and also accounted for her request in the division of

13

the marital property. The trial court also acknowledged that it had considered the evidence of the parties' financial circumstances, as reflected in the record. Determining that the wife lacked the necessary funds, the court ordered the husband to pay her expert witness fees in the amount of $35,562.85.

Based on the record before us, we find no abuse of discretion. The wife was awarded the marital residence, and the husband was ordered to pay spousal support for five years, in the amount of $2,500 each month, and a total of $2190 in child support each month. At the time of trial, the husband was not working, and the business was operating at a loss. See *Hoard*, supra, 298 Ga. at 731 (2) (no abuse of discretion in fee award where the trial court considered the parties' equity interests in real property and the husband's obligation to pay for their child's private schooling); *Wilson v. Wilson*, 243 Ga. 637 (256 SE2d 334) (1979) (trial judge could have found that the appellant was capable of paying her own attorneys, given that she would receive spousal support).[9] Therefore, we conclude that the trial court properly exercised its discretion in entering the fee award.

[9] Although the wife states that business bank accounts contained $1 million at a certain time, her expert testified that this money had dissipated. Insofar as the wife suggests that the trial court's decisions on the fee awards were contradictory because the court ordered the husband to pay for her expert witness fees while finding him to be "penniless," the court never found that the husband had no assets whatsoever.

14

6. The wife repeatedly argues that the trial court ignored the husband's "purposeful manipulation and waste of marital assets" in an effort to reduce her share of the estate, and she insists that the husband transferred marital funds to business bank accounts to hide them and then transferred these funds to other "tertiary locations." Even assuming, without deciding, that the trial court was obligated to consider the issue of "marital waste," we still conclude that the court did not abuse its broad discretion in dividing the marital estate.

We again observe that this enumeration of error is entirely devoid of record citations, and so we cannot definitively decipher what evidence supposedly supports the wife's claim. We reiterate that "[o]ur requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court[.]" (Citation omitted.) *AdvanceMe, Inc. v. Finley*, 275 Ga. App. 415, 416 (1) (620 SE2d 655) (2005). Nonetheless, even examining certain transfers listed in the facts section of the wife's appellate brief, we still cannot say that the trial court was bound to find that the husband was hiding and manipulating marital assets.

First, although the husband sold a home that was acquired during the marriage and transferred a portion of the proceeds to his business partner, we glean that this

15

property was not at issue in the divorce.[10] Second, in June and July 2020, the husband transferred a total of $288,000 from a personal account to a business account. He testified, however, that this money belonged to the business, and he transferred these funds when he and his business partner planned to build an office. Third, the facts section refers to two transfers from the business account, in the amounts of $120,500 and $140,500. These funds were for the purchase of a property which the trial court awarded to the husband, and for the reimbursement of a debt to the husband's business partner. Lastly, although the wife's expert testified regarding cash withdrawals from the business account, checks drawn on the account, and a transfer to the husband's business partner, the expert did not know the details of these transactions, and she could not say whether these transactions simply furthered the operation of the business. We note, too, that the husband's business partner never noticed any significant amounts of money "disappear[ing] from [the] business."

Given the record before us, the trial court was not obligated to find that the husband was purposefully hiding and wasting assets in an attempt to reduce the wife's portion of the marital estate. Therefore, even assuming, without deciding, that

[10] In fact, the wife's attorney stated to the trial court that this property sale was only relevant to counteract evidence that the wife took more than $140,000 of the business's money from a safe in the parties' home without the husband's knowledge.

16

the trial court was required to consider the issue of "marital waste," we find no abuse of discretion.

7. Lastly, in related claims, the wife argues that the evidence does not support the trial court's findings on the distribution of the parties' debts, and therefore the trial court abused its discretion when it divided the debts. Specifically, she argues that although the trial court determined that each party would be liable for the debts in his or her own name, the court erred in designating her as the owner of several charge accounts. We agree that the trial court erred on this issue.

In its factual findings on the parties' debts and liabilities, the trial court found that five charge accounts were in the wife's name. These accounts include a Bank of America account ending in 6546; a Bank of America account ending in 6799; a Discover account ending in 8650; a TJX Rewards account ending in 4258; and a TJX Rewards account ending in 6404. As to the first three accounts, the evidence definitively shows that none of these accounts were in the wife's name. And, we have found no evidence showing that the TJX Rewards accounts belonged to the wife. Notably, the husband does not claim that the wife was the owner of these accounts. Instead, he states in his appellee brief that each party can examine their records and ascertain the owner of each account. Nevertheless, because the trial court made

17

determinative findings that these accounts were attributable to the wife as debts, and these findings are unsupported by the evidence, they cannot stand on appeal. *Beyond Meat, Inc. v. Don Lee Farms*, 358 Ga. App. 77, 81 (1) (853 SE2d 667) (2021) (factual findings that were unsupported by the record were not harmless and required remand). We must therefore reverse this portion of the trial court's final judgment and remand this case to allow the trial court to correctly allocate these accounts. See, e.g., *Dupree v. Dupree*, 287 Ga. 319, 320 (2) (695 SE2d 628) (2010) (reversing in part and remanding on the issue of each party's share of uninsured health care expenses).

Accordingly, we affirm the judgment of divorce, the division of the marital assets, the discretionary awards, and the fee award, but we reverse the portion of the final judgment allocating the parties' individual debts, and we remand this case to allow the trial court to correctly assign these debts.

*Judgment affirmed in part, reversed in part, and case remanded with direction. Mercier and Hodges, JJ., concur.*