### A09A0781. CROFT v. CROFT.
(680 SE2d 150)

DOYLE, Judge.

The Superior Court of Columbia County awarded temporary custody of Richard D. Croft's ("father") minor child to the child's mother, Amber L. Croft ("mother"). The father filed a direct appeal, challenging jurisdiction and service of process.[1] Finding no error, we affirm.[2]

---

[1] In 2007, the General Assembly amended OCGA § 5-6-34 to provide that *"[a]ll judgments or orders in child custody cases* including, but not limited to, awarding or refusing to change child custody or holding or declining to hold persons in contempt of such child custody judgment or orders" filed on or after January 1, 2008, are directly appealable. (Emphasis supplied.) OCGA § 5-6-34 (a) (11). Prior to the amendment, in general, a party seeking appellate review from an interlocutory order was required to follow the interlocutory application procedure set forth in OCGA § 5-6-34 (b). See *Gray v. Springs*, 224 Ga. App. 427 (481 SE2d 3) (1997). Now, however, based on the express language of the recent amendment to the statute, orders in child custody cases are no longer subject to interlocutory or discretionary appeal procedures. See *Taylor v. Curl*, 298 Ga. App. 45 (679 SE2d 80) (2009); *Moore v. Moore-McKinney*, 297 Ga. App. 703, 704 (1) (678 SE2d 152) (2009).

[2] The mother has failed to file a brief. "[A]ccordingly, [she] must stand on the strength of

The parties were married on March 11, 2006, and they moved to Blackville, South Carolina immediately thereafter. Their son, R. C., was born on September 12, 2006.[3] On or about October 1, 2007, the family moved from Blackville to Augusta, Georgia. On or about March 20, 2008, the father moved out of the marital home and returned to South Carolina; the mother, who was working part-time and taking online classes, remained in Augusta with R. C.

Initially, R. C. lived with the mother, and he visited the father's home in South Carolina on the weekends. Then, beginning on May 1, 2008 — pursuant to an agreement between the parents — R. C. stayed with the father Monday through Thursday and with the mother Friday through Sunday. The mother began taking classes at the Medical College of Georgia ("MCG") in August 2008, and on September 5, 2008, she enrolled R. C. at the MCG daycare. On September 8, 2008, the mother told the father that R. C. was going to remain with her in Augusta and would be attending the MCG daycare the following day.

On September 9, 2008, the father — who testified that he did not agree to allow R. C. to live with the mother and attend the MCG daycare in Augusta — filed a complaint seeking custody of R. C. in the Family Court of Barnwell County, South Carolina. That afternoon, the father went to the mother's house to see R. C., with her permission. The father picked up R. C., placed the child in his truck, and drove away.

On September 15, 2008, the mother filed the instant action seeking temporary custody and a divorce. She attached a copy of the South Carolina complaint to her petition, alleging that she had not been served with the South Carolina action and that she was not subject to the jurisdiction of the South Carolina court.[4] The father was served with a copy of the Georgia complaint in South Carolina by a private process server on September 18, 2008, and he filed an answer and counterclaim on September 29, 2008, asserting the defenses of lack of jurisdiction and improper service of process.

The father and the mother both testified at a September 29, 2008 emergency custody hearing. At the conclusion of the testimony, the trial court awarded temporary custody to the mother and ordered that the father be held at the courthouse until he produced R. C. In its October 15, 2007 written order, the trial court concluded

the record before us, as the contents thereof are interpreted by this Court, and without benefit of any written appellate brief or oral argument." *Loftin v. Gulf Contracting Co.*, 224 Ga. App. 210, 213 (1) (480 SE2d 604) (1997).

[3] R. C. was born at the University Hospital in Augusta, Georgia.

[4] The mother was served thereafter by a private process server in Georgia on September 19, 2008.

that R. C. resided in Georgia from October 2007 until at least May 1, 2008, and thus, Georgia "is the home state of the child [because] Georgia was the child's home state within six months before the commencement of this action pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act [("UCCJEA")]."[5] The trial court noted that the father "did exactly what the UCCJEA is intended to prohibit; that is, separate from his wife, take the child, move to another state, and require [the mother] to chase him into the other state in order to exercise her parental rights and privileges." The father now appeals this ruling.

1. The father alleges that the trial court erred in determining that Georgia was the home state of R. C. and in concluding that the father was subject to the jurisdiction of the Georgia court. We disagree.

Georgia adopted the UCCJEA in 2001,[6] replacing its prior child custody act (the Uniform Child Custody Jurisdiction Act), "because, in application, imprecision in [the prior act's] language often allowed for the existence of concurrent jurisdiction over custody matters in multiple states, thereby fostering competition among jurisdictions and forum shopping by the parties."[7] OCGA § 19-9-61 (a) provides that

. . .

a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Code Section 19-9-67 or 19-9-68 and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

---

[5] OCGA § 19-9-40 et seq.

[6] South Carolina has also adopted the UCCJEA. See S.C. Code Ann. § 63-15-300 et seq.

[7] *Fish v. Fish*, 266 Ga. App. 224, 225, n. 1 (596 SE2d 654) (2004).

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Code Section 19-9-67 or 19-9-68; or

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3) of this subsection.

Here, the trial court had jurisdiction to make its temporary custody award under OCGA § 19-9-61 (a) (1). The UCCJEA defines "[h]ome state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."[8] "Commencement" is defined as "the filing of the first pleading in a proceeding."[9]

R. C. moved to Georgia with the parties in October 2007. Assuming for the sake of argument that R. C. "moved" to South Carolina when he began staying there with the father four days a week, that did not occur until May 1, 2008. The mother filed her divorce and custody petition on September 15, 2008. Thus, R. C. did not live in either South Carolina or Georgia for the "six consecutive months immediately before" the date the mother filed her petition.[10] Georgia was, however, R. C.'s home state "within six months before the commencement of the proceeding," and at the time the mother filed the petition, the child was absent from Georgia while the mother continued to live in Georgia. Thus, the UCCJEA conferred jurisdiction on the trial court under OCGA § 19-9-61 (a) (1).[11]

2. The father also argues that the trial court erred in failing to confer with the trial court in South Carolina before exercising jurisdiction pursuant to OCGA § 19-9-66. This argument is without merit.

OCGA § 19-9-66 (b) requires that

[e]xcept as otherwise provided in Code Section 19-9-64, a

---

[8] OCGA § 19-9-41 (7).

[9] OCGA § 19-9-41 (5).

[10] OCGA § 19-9-41 (7).

[11] We note that the trial court also had jurisdiction under subsections (2) and (4) of OCGA § 19-9-61 (a) because South Carolina was not R. C.'s home state under the UCCJEA, and both the child and the mother had significant connections in Georgia, including enrollment in school, R. C.'s pediatrician and another doctor, and additional family members.

court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to Code Section 19-9-69. If the court determines that a child custody proceeding has been commenced in a court *in another state having jurisdiction substantially in accordance with this article*, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this article does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.[12]

Here, for the reasons set forth in Division 1, South Carolina did not have jurisdiction "substantially in accordance with this article," and therefore, under the language of the code section, there was no requirement that the trial court here confer with the trial court in South Carolina.[13]

3. The father maintains that the trial court erred in rejecting his argument that he had not been properly served with a copy of this lawsuit as required by OCGA § 9-11-4. Again, we disagree.

First, the UCCJEA specifically provides that "personal jurisdiction over . . . a party or a child is not necessary or sufficient to make a child custody determination."[14] The Act further provides that

[n]otice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective.[15]

OCGA § 19-9-47 (b) also states that "[p]roof of service may be made in the manner prescribed by the law of this state or by the law of the state in which the service is made."

Here, the father was personally served with a copy of the complaint and summons — as evidenced by a notarized affidavit from the process server — and he attended the emergency custody

---

[12] (Emphasis supplied.)
[13] See OCGA §§ 19-9-61 (a); 19-9-66 (b). Cf. *Kelly v. Silverstein*, 207 Ga. App. 381, 382 (427 SE2d 851) (1993) (decided under former Code Section 19-9-46 (a)).
[14] OCGA § 19-9-61 (c).
[15] OCGA § 19-9-47 (a).

hearing. Such service was sufficient under South Carolina law.[16] Thus, this enumeration presents no basis for reversal.[17]

4. Finally, the father argues that the trial court "improperly ordered" him to be held in the custody of the sheriff until R. C. was brought to the courthouse. The father does not cite a case to support this argument and, instead, simply argues that absent a finding of contempt, the trial court had no such arrest powers. However, pretermitting whether the trial court exceeded its authority in requiring that the father be held at the courthouse until R. C. was produced, he did not object to the ruling at the hearing. "No matter how erroneous a ruling of the trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. Accordingly, the instant claim of error is waived."[18] Furthermore, the issue is moot since there is no evidence — nor does the father allege — that he remains in the custody of the sheriff. Thus, this argument presents no basis for reversal.[19]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 11, 2009.

*John Ryd Bush Long*, for appellant.
*Catherine V. Ryan*, for appellee.

---

[16] See Rule 4 (d) (1), South Carolina Rules of Civil Procedure (delivery of a copy of the summons and complaint to an adult personally constitutes sufficient service); *BB&T v. Taylor*, 369 S.C. 548, 552 (633 SE2d 501) (2006).

[17] We note that the father's reliance on *Ashburn v. Baker*, 256 Ga. 507 (350 SE2d 437) (1986) is misplaced because that opinion was issued before Georgia adopted the UCCJEA.

[18] (Punctuation and footnote omitted.) *Hillman v. State*, 296 Ga. App. 310, 315 (4) (674 SE2d 370) (2009).

[19] See OCGA § 5-6-34 (d) ("[n]othing in this subsection shall require the appellate court to pass upon questions which are rendered moot"); *Hopkins v. Hamby Corp.*, 273 Ga. 19 (538 SE2d 37) (2000) ("[t]he general rule is that appellate courts do not consider moot questions") (footnote omitted).