300 Ga. 702
FINAL COPY

S16A1750.  MARKLE v. DASS.

HINES, Chief Justice.

Donald T. Markle ("Markle") appeals from the grant of a writ of habeas corpus in this child custody case.  For the reasons that follow, we vacate the superior court's order.

While residing in Georgia in 2010, Katrina Joy Dass ("Dass") gave birth to the minor child who is at the center of this controversy; Dass and Markle, the child's father, were never married, and prior to 2016, Markle did not attempt to legitimate the child.[1]  Sometime after the child's birth, Markle relocated to New Mexico.  The child lived in Georgia with Dass from birth until January 2011; he then lived with both Markle and Dass in New Mexico until August 2012.  Dass returned to Georgia, and the child lived in Georgia with her from August 2012 until July 2015, spending the summers of 2013 and 2014 in New Mexico with Markle.  In July 2015, the child returned to New Mexico, and it is undisputed

_____

[1] Although Markle has not been adjudicated the father of the child, Dass refers to him as such in her brief in this Court.  The order below refers to him as "the putative father."

that between late July 2015 and Dass's February 16, 2016 filing of her petition for a writ of habeas corpus, the child lived continuously in New Mexico with Markle, and that Dass did not live with them in New Mexico.

On January 26, 2016, Markle filed in the Second Judicial District Court, County of Bernillo, New Mexico, a verified petition seeking to determine paternity, custody, and child support for the minor child, naming Dass as respondent. The New Mexico court entered a temporary order providing, inter alia, that the child not be removed from New Mexico without the written consent of the other party. Dass requested that Markle return the child to Georgia, but Markle declined. On February 16, 2016, Dass filed in the Superior Court of Cobb County a "Petition for Writ of Habeas Corpus and Emergency Motion for Return of Child." After a hearing, the superior court entered a writ of habeas corpus on February 24, 2016, finding that Georgia was the "home state" of the child within the meaning of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), OCGA § 19-9-40 et seq., and ordering that the child be returned to Dass.

Under the UCCJEA, the superior court's subject matter jurisdiction to make such "an initial child custody determination is heavily dependent on the

question of whether the court is of a state that is the child's 'home state.' See

OCGA § 19-9-61.[2] [Cit.]" *Bellew v. Larese*, 288 Ga. 495, 498 (796 SE2d 78)

(2011). See also *Kuriatnyk v. Kuriatnyk*, 286 Ga. 589, 590 (1) (690 SE2d 397)

(2010). The superior court could properly determine that it had jurisdiction

under OCGA § 19-9-61 (a) (1)[3] only if Georgia was

---

[2] OCGA § 19-9-61 reads:
(a) Except as otherwise provided in Code Section 19-9-64, a court of this state has jurisdiction to make an initial child custody determination only if:
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> (2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Code Section 19-9-67 or 19-9-68 and:
> > (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> > (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
> (3) All courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Code Section 19-9-67 or 19-9-68; or
> (4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3) of this subsection.
(b) Subsection (a) of this Code section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

[3] No issue is presented under any other subsection of OCGA § 19-9-61.

3

the home state of the child on the date of the commencement of the [habeas corpus] proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

OCGA § 19-9-61 (a) (1).[4]

It is uncontroverted that on the date of Dass's February 16, 2016 filing of the petition for a writ of habeas corpus, and for the six months prior to it, the child lived with Markle in New Mexico, and not in Georgia. The trial court nonetheless found that the child's "residence is and has been in the State of Georgia since August 2012," determined that the child's presence in New Mexico was temporary and did not affect the child's residential status in Georgia, and declared Georgia to be the child's "home state." But, the UCCJEA defines "home state" as

the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period

---

[4] The fact that Dass pursued this action through a petition for a writ of habeas corpus does not affect the applicability of the UCCJEA. See *Etzion v. Evans*, 247 Ga. 390 (276 SE2d 577) (1981), decided under the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act. *Bellew*, supra at 496. See also OCGA § 19-9-61 (b), providing that OCGA § 19-9-61 (a) (1) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state."

of temporary absence of any of the mentioned persons is part of the period.

OCGA § 19-9-41 (7).[5]  And, as noted, the child lived in New Mexico

_____

[5] OCGA § 19-9-41 reads:
In this article:
(1) "Abandoned" means left without provision for reasonable and necessary care or supervision.
(2) "Child" means an individual who has not attained 18 years of age.
(3) "Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligations of an individual.
(4) "Child custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from family violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under Part 3 of this article.
(5) "Commencement" means the filing of the first pleading in a proceeding.
(6) "Court" means an entity authorized under the law of a state to establish, enforce, or modify a child custody determination.
(7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.
(8) "Initial determination" means the first child custody determination concerning a particular child.
(9) "Issuing court" means the court that makes a child custody determination for which enforcement is sought under this article.
(10) "Issuing state" means the state in which a child custody determination is made.
(11) "Modification" means a child custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination.
(12) "Person" means an individual, corporation, business trust, estate, trust,

5

with Markle for six months preceding Dass's filing of the petition for a writ of

habeas corpus.[6]

---

partnership, limited liability company, association, joint venture, government; governmental subdivision, agency, or instrumentality; public corporation; or any other legal or commercial entity.

(13) "Person acting as a parent" means a person, other than a parent, who:

(A) Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and

(B) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state.

(14) "Physical custody" means the physical care and supervision of a child.

(15) "State" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.

(16) "Tribe" means an Indian tribe or band or Alaskan Native village which is recognized by federal law or formally acknowledged by a state.

(17) "Warrant" means an order issued by a court authorizing law enforcement officers to take physical custody of a child.

[6] Dass does not contest that Markle can be considered a "parent or a person acting as a parent" within the meaning of the UCCJEA, and in any event, it appears that he should be so considered. Under the statutory definition, OCGA § 19-9-41 (13), a "person acting as a parent" means "a person, other than a parent, who . . . [h]as physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding . . . and [h]as been awarded legal custody by a court or claims a right to legal custody under the law of this state." It is uncontroverted that Markle had physical custody of the child at the time of the filing of the petition for a writ of habeas corpus, and had such custody for six months. Although he had not been adjudicated a parent of the child or awarded legal custody, he claims a right to legal custody that would be recognized under the laws of this State. We do not take OCGA § 19-9-41 (13)'s requirement that a claim of a right to legal custody be "under the laws of this state" to require that a recognized claim must be made in a proceeding in a Georgia court; to so construe that language would be contrary to the UCCJEA's purposes of combating forum shopping and avoiding jurisdictional competition. See *Bellew*, supra at 496; *Croft v. Croft*, 298 Ga. App. 303, 305 (1) (680 SE2d 150) (2009). See also *In the Matter of the Guardianship of Alexis C.*, 794 NW2d 533, 540-542 (18)-(24) (Wis. App. 2010), implicitly recognizing that the phrase "claims a right to legal custody under the law of this state" would embrace a claim *recognized* by the state in which jurisdiction is sought, even though the claim was *made* in another state.

It appears that the superior court declared Georgia to be the "home state" of the child based upon its finding that, prior to August 2015, the child's residence — and the custodial mother's residence — was in Georgia, and that the court then determined that the child's presence in New Mexico was a "temporary absence" from that residence. But, that is not an analysis that the statutory definition of "home state" permits. As has been noted,

> "home state" is not synonymous with the "residence or domicile of the parent having legal custody." [Cit.] Rather, the term "lived" in the definition of "home state" refers to the state where the child is physically present "without regard to legal residence." [Cits.] "If the General Assembly had intended that jurisdiction be based upon legal residence or domicile, it would undoubtedly have used these technical terms." [Cit.]

*Slay v. Calhoun*, 332 Ga. App. 335, 341 (2) (772 SE2d 425) (2015).

By its plain language, OCGA § 19-9-41 (7) defines "home state" in terms of current presence, and declares a time frame for that presence to have the necessary legal effect, i.e., six months, or the child's life, if the child is less than six months of age. It is that six-month period that OCGA § 19-9-41 (7) refers to when it speaks of a temporary absence as "part of the period." OCGA § 19-9-41 (7) looks to the present, and then backward six months; it does not look to legal residence or domicile at some point in the past, and then look forward. As

7

noted, it is uncontroverted that the child was never absent from New Mexico during the six months prior to Dass's filing of the petition for a writ of habeas corpus. Thus, it is New Mexico, not Georgia, that meets the definition of "home state" under OCGA § 19-9-41 (7), and the Georgia court could not have jurisdiction under OCGA § 19-9-61 (a) (1) unless it had been the child's "home state" within six months before Dass filed her petition for a writ of habeas corpus, which was not the case.

Georgia adopted the UCCJEA in 2001 in part to reduce competition among jurisdictions. See *Bellew*, supra at 496; *Delgado v. Combs*, 314 Ga. App. 419, 424-425 (724 SE2d 436) (2012). A belief that may underlie such competition is that only the courts of this State can be trusted to make a fair custody determination involving a Georgia parent when the other parent is a resident of the forum state. But, New Mexico has adopted its own version of the UCCJEA, see N.M. Stat. Ann. 1978, §§ 40-10A-101 to 40-10A-403 (2001), including provisions for a court therein to decline to exercise its jurisdiction upon a determination that another state is a more appropriate forum, see N.M. Stat. Ann. 1978, § 40-10A-207, or that a person seeking to invoke that court's jurisdiction has engaged in unjustifiable conduct. See N.M. Stat. Ann. 1978, §§

40–10A–208.[7]  Nothing precludes Dass from seeking such a ruling from the New Mexico court, and nothing indicates that, were a custody determination to be made by the New Mexico court, it would be unfair to her.[8]

As the superior court did not have subject matter jurisdiction under OCGA § 19-9-61 (a) (1), its order granting the writ of habeas corpus must be vacated. See *Davis v. Harpagon Co., LLC*, 281 Ga. 250, 253 (8) (637 SE2d 1) (2006).

Judgment vacated.  All the Justices concur.

Decided March 6, 2017.

Habeus corpus. Cobb Superior Court. Before Judge Ingram.

Ryan A. Proctor, for appellant.

The Cherry Law Firm, Diane Cherry, Shana R. Webb, for appellee.

---

[7] The UCCJEA also provides for jurisdiction in a Georgia court should  the New Mexico court make any such determination. See OCGA § 19-9-61 (a) (2).

[8] Although Dass contends in this Court that the superior court was empowered to exercise temporary emergency jurisdiction under OCGA § 19-9-64 (a), under these circumstances,

> [i]t cannot be said that the superior court was empowered to exercise temporary emergency jurisdiction. OCGA § 19-9-64 (a) authorizes temporary emergency jurisdiction only "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse."

*Jackson v. Sanomi*, 292 Ga. 888, 890 (742 SE2d 717) (2013).  The superior court's order does not rely upon OCGA § 19-9-64 (a); it made no finding that would support such reliance; and it did not issue a temporary order under the provisions of OCGA § 19-9-64 (b), (c), or (d).  Further, it does not appear that Dass ever alleged that the child was actually "subjected to or threatened with mistreatment or abuse."