**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 16, 2020**

# In the Court of Appeals of Georgia

A19A1936. RAZI v. BURNS.

RICKMAN, Judge.

In this child custody action, Father filed a petition to modify child custody in the Superior Court of DeKalb County (the "Georgia Court") and litigated the case for over three years before attempting, unsuccessfully, to voluntarily dismiss the action after several hearings and numerous court orders. He now asserts, among other things, that the Georgia Court failed to establish that it had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to consider his modification petition and erred in denying his attempt to voluntarily dismiss the case. Because we conclude that the undisputed record fully supports the Georgia Court's determination that it had jurisdiction under the UCCJEA, and further that the only

conflict in this case has been created by Father's own actions and his legal arguments lack merit, we affirm.

The following facts are undisputed. Father and Mother are the parents of two minor children. Although they never married, Father's paternal rights were established by a legitimation action in California. In 2013, the parties entered into a conciliation agreement and stipulated order for joint physical and legal custody of the children in the Superior Court of California (the "California Court"). In the agreement, the parties stipulated that Father was the biological father of the children and that California was their home state.

In January 2016, the parties and both minor children relocated to Georgia. That same month, the children were enrolled into a public school in Atlanta.

On November 7, 2016, Father unilaterally disenrolled the children from school and absconded with them to California without Mother's knowledge or consent. Three days later, Father filed a ex parte petition for modification of child custody[1] in the California Court and obtained an emergency order granting him sole legal custody of the children to enroll them into a California school under the guise that the Atlanta

---

[1] Father's petition for modification of child custody is not contained in the record but is referenced in the California Court's December 2016 order.

2

school had refused to do so. Mother filed an application in the California Court seeking an immediate return of the children to Georgia and to her sole custody, and further requesting a transfer of the case to a Georgia court.

Following a hearing, the California Court exercised temporary jurisdiction to issue an emergency order under the UCCJEA.[2] In the emergency order, the California Court declared Father's application for ex parte relief "duplicitous" and explicitly stated that both the application and his statements made during the hearing lacked candor and were "not credible." The California Court expressed doubt that California was the home state of the children under the UCCJEA, noting that "[i]t appears that Georgia is the home state because this proceeding was initiated only days after . . . Father brought the children to California." It further granted Mother sole legal and physical custody of the children "until further order of a court with jurisdiction under the [UCCJEA]."

The following month, in December 2016, Father started the instant proceedings by filing a verified petition to modify custody in the Georgia Court. In the verified petition, he affirmatively asserted that he was a resident of Fulton County, Mother was a resident of DeKalb County and had been for a period of more than six months

---

[2] See OCGA § 19-9-64; Cal. Fam. Code §3447.

3

preceding the date of the petition, and Georgia was the home state of the minor children.

Mother filed a verified answer in which she also admitted that she was a resident of DeKalb County and had been for a period of more than six months preceding the date of the petition, and that Georgia was the home state of the children. She not only posed no objection to the Georgia Court's exercise of jurisdiction, but specifically requested that the court "immediately" obtain jurisdiction over the case.

In May 2017,[3] the Georgia Court conducted a hearing on Father's modification petition, a transcript of which is not contained in the record. Following the hearing – and contrary to the position taken by the dissent – the Georgia Court issued a temporary modification order in which it considered its jurisdiction, explicitly finding that both Father and Mother – and thus the children[4] – resided in Georgia and that jurisdiction and venue were proper in its court. The Georgia Court ordered that

---

[3] In the interim, the Georgia Court ordered the parties to mediation, and in April 2017, they entered into a temporary mediation agreement.

[4] Although the trial court's order does not explicitly state that the children resided in Georgia, it is undisputed that the children lived with and between their parents and according to the parties' verified pleadings, Georgia was their home state.

4

Mother retain primary physical and legal custody of the children and granted Father visitation.

A follow-up hearing was scheduled to occur in November 2017, although it was continued several times on Father's motion. Meanwhile, the infighting between Father and Mother continued, with each parent lodging various allegations of misconduct against the other, and Father filing a motion for the appointment of a guardian ad litem ("GAL") to investigate the claims.

In May 2018, the Department of Family and Children Services ("DFCS") removed the children from their Mother's home and placed them into Father's custody following an allegation of abuse against one of the children. Pursuant to a "safety plan" implemented by DFCS, the children were to have no contact with Mother. Both parents filed motions in the Georgia Court seeking an immediate hearing, with the Father asking to terminate Mother's visitation for the alleged acts of violence, and the mother seeking to hold Father in contempt for "vilify[ing] and defam[ing]" her character with "unfounded" abuse allegations resulting in her loss of custody.

In June 2018, the Georgia Court held an emergency hearing – which also constituted the follow-up hearing – to address all outstanding motions. Noting that

it was "not persuaded that either party [was] being entirely truthful" due to their "very contentious relationship," the court held that it "[could not] make a wholly informed custody decision without the benefit of a full investigation."[5] The court, therefore, directed that the safety plan would be honored, but it appointed a GAL to conduct an investigation and make recommendations concerning child custody and visitation based upon the best interests of the children.

Two months later, the GAL filed a motion in which she stated that it was "imperative" that the court order the children to begin therapy, and that Mother "immediately" be granted weekly visitation. She further requested that she be given an extension of time in which to complete a report so that she may have the opportunity to consult with the children's therapist and observe their visitation with Mother before making a custody recommendation. The GAL also called into question the Father's allegations of abuse, noting that they were "unsubstantiated," and stated that Mother had been kept from having any meaningful interactions with the children for over six months.

---

[5] The order containing its written ruling from the June 2018 emergency hearing was dated February 7, 2019, nunc pro tunc to June 26, 2018.

The Georgia Court scheduled a hearing to consider the GAL's motion on January 22, 2019.[6] In the week before the hearing, Father filed a motion for a continuance and his attorney filed a motion to withdraw as counsel, citing "disagree[ments] on litigation strategy." The Georgia Court denied the motion for continuance and objected to the motion for withdrawal – taking notice that it was Father who requested the appointment of the GAL – and directed both Father and his counsel to appear at the hearing.[7]

Father appeared on the day of the hearing and filed a notice of voluntary dismissal without prejudice. The Georgia Court vacated Father's voluntary dismissal. In so doing, the court held, among other things, that it "ha[d] held multiple hearings in this case at which witnesses testified," that "it appear[ed] from [Father's] testimony at the most recent hearing that he [was] dissatisfied with the preliminary investigation conducted by the GAL," and that "the filing of the dismissal prior to the hearing was an attempt to halt any further investigation." In a separate order, the court granted the GAL's motion that the children begin therapy immediately; Mother be given limited, unsupervised visitation with the children; and the GAL receive additional time in

---

[6] The record does not contain a transcript of the January 22, 2019 hearing.

[7] The Georgia Court later granted the attorney's motion to withdraw.

7

order to conduct her investigation. Father now challenges the Georgia Court's authority to issue those orders.

1. Father argues that the Georgia Court erred in holding that it had subject matter jurisdiction under the UCCJEA to consider the modification petition that Father himself filed in the Georgia Court. Specifically, he contends that the trial court failed to make express findings that Georgia is the "home state" of the children. As set forth below, the Georgia Court properly determined that it had jurisdiction under the UCCJEA to consider the modification petition, and the UCCJEA did not require that the court include in its order express factual findings as to the children's "home state."

The UCCJEA has been adopted and codified in both Georgia and California. See OCGA § 19-9-40 et seq.; Cal. Fam. Code § 3400 et seq. The pertinent provision of the UCCJEA provides that a Georgia court may not modify a child-custody determination made by a court in another state *unless*

> a court of this state has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection (a) of Code Section 19-9-61 and . . . [a] court of this state or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.

8

OCGA § 19-9-63 (2) (emphasis supplied)[8]; see also Cal. Fam. Code § 3423 (b). As to the first of these requirements, a court of this state has jurisdiction to make an initial custody determination under OCGA § 19-9-61 (a) (1) if Georgia was "the home state of the child on the date of the commencement of the proceeding." See also Cal. Fam. Code § 3421 (a) (1). "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." See OCGA § 19-9-41 (7); Cal. Fam. Code § 3402 (g). As shown below, both requirements of OCGA § 19-9-63 (2) have been satisfied.

The Georgia Court conducted a untranscribed, evidentiary hearing and based on the evidence and argument of the parties, issued the temporary modification order in which it explicitly found that Father and Mother resided in Georgia and that jurisdiction was proper in its court. Although the dissent takes issue with the fact that the order did not explicitly reference the children in its order, it is undisputed that the children lived with and between their parents throughout the duration of these proceedings, and there is no allegation or record evidence to the contrary. Rather, as

---

[8] OCGA § 19-9-63 excepts jurisdiction otherwise allowed by its temporary emergency jurisdiction, such as that which the California Court exercised in its 2016 emergency order. See OCGA § 19-9-64. See also Cal. Fam. Code §3447.

illustrated below, the Georgia Court's determination that jurisdiction was proper in its court is at least supported – if not demanded – by the evidence.

As to the children's "home state," i.e., the state in which they lived for at least six consecutive months before Father filed the modification petition in the Georgia Court, both parties attested to that fact in their verified pleadings. Their sworn statements are corroborated by evidence that the children had been enrolled in a public school in Georgia from January 2016 through November 2016, when Father unilaterally disenrolled them and absconded with them to California, only to return to Georgia to file the modification petition in the Georgia Court the following month. See OCGA §§ 19-9-41 (7), 19-9-61 (a) (1); Cal. Fam. Code §§ 3421 (a) (1), 3402 (g). See generally *Black v. Black*, 292 Ga. 691, 694 (2) (a) (740 SE2d 613) (2013) (holding that Georgia was the "home state" of the children under the UCCJEA because the mother and children had lived in Georgia for more than six months prior to the filing of the child custody petition and continued to live there at the time it was filed).

As to the requirement that the court find neither the children nor their parents "presently reside[d]" in California, again, both Father and Mother swore in their verified pleadings that they and their children resided in Georgia, a fact that is also

corroborated by the children's school enrollment in Georgia. See OCGA § 19-9-63 (2); Cal. Fam. Code § 3423 (b). See generally *Hall v. Wellborn*, 295 Ga. App. 884, 885-886 (673 SE2d 341) (2009) (holding that Georgia lost original, exclusive jurisdiction over child custody case when a Florida court determined that both the parents and the child "presently reside[d]" in Florida).

It follows that the record fully supports the Georgia Court's determination that it had jurisdiction to modify the child custody order under the UCCJEA. See OCGA § 19-9-63 (2); Cal. Fam. Code § 3423 (b). Although the Georgia Court was required to consider its own jurisdiction, as it did, nothing in the UCCJEA required that it specifically include in its order factual findings as to the children's "home state." See *Wondium v. Getachew*, 289 Ga. 208, 210 (2) (710 SE2d 139) (2011) (rejecting father's argument that the UCCJEA required "jurisdictional findings regarding the children's home state" in the body of the court's custody modification order because the Court found "no such authority"). Likewise, the Georgia Court's explicit finding following a hearing that both Father and Mother "presently reside[d]" in Georgia was sufficient to include a finding as to the children when there is not a scintilla of record evidence suggesting that the children resided anywhere but with their parents.

11

Consistent with our holding, we note that the official comment §101 to the UCCJEA states that it was intended, in part, to prevent the very type of gamesmanship at play in this case by "[d]iscourag[ing] the use of the interstate system for continuing controversies over child custody." UCCJEA § 101 cmt; see generally *Bowman v. Bowman*, 345 Ga. App. 380, 383 (2) (a) (811 SE2d 103) (2018) (recognizing that "[w]e construe the UCCJEA liberally so as to carry out the remedial aspects of the law").

2. Father argues that the Georgia Court erred in vacating his voluntary dismissal. In support of his argument, he relies on OCGA § 9-11-41 (a) (1) (A), which provides that, "an action may be dismissed by the plaintiff, without order or permission of court . . . [b]y filing a written notice of dismissal at any time before the first witness is sworn."

As correctly held by the Georgia Court, Father's voluntary dismissal was not filed "before the first witness [was] sworn." OCGA § 9-11-41 (a) (1) (A). Rather, it was filed after the Georgia Court "held multiple hearings in this case at which witnesses testified and [after the court] issued a temporary order regarding custody and visitation," among other orders. Indeed, the transcript of the emergency hearing conducted in June 2016 shows that, at the very latest, witnesses were sworn on that

date. Thus, under a plain reading of the statute, Father was not entitled to voluntarily dismiss the case without order or permission of the court. See *Arby's Restaurant Group v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) ("[W]e must presume that the General Assembly meant what it said and said what it meant.") (citation and punctuation omitted); see also *Durrance v. Schad*, 345 Ga. App. 826, 829-830 (1) (815 SE2d 164) (2018).

Father's tactic in this litigation is similar to that of the wife in *Groves v. Groves*, 250 Ga. 459, 459 (298 SE2d 506) (1983), as summarized by our Supreme Court:

> the wife initiated the litigation, invoked the aid of the court in determining custody and temporary support, appeared at a hearing, and obtained partial relief in the form of the award of temporary custody of one of the three children, along with child support. Being dissatisfied with the grant of temporary custody of two other children to the husband, she filed notice of dismissal, and, according to the findings of the trial court, removed to another county.

Id. at 459. The *Groves* Court held that the wife's voluntary dismissal of her case was ineffective because it violated a prior version of OCGA § 9-11-41 (a), which permitted a voluntary dismissal "any time before verdict." Id. The Court determined that a "decision relative to temporary custody of the children is a 'verdict' within the

13

contemplation of the Civil Practice Act." Id. Consistent with that analogy, a sworn witness in a custody hearing resulting in a temporary custody determination is a "witness" within the contemplation of the Civil Practice Act. See OCGA § 9-11-41 (a) (1) (A). Cf. *Groves*, 250 Ga. at 459. Compare *Target Nat. Bank v. Luffman*, 324 Ga. App. 442, 444 (750 SE2d 750) (2013) (holding that OCGA § 9-11-41 (a) does not bar a voluntary dismissal after sworn testimony is given in a magistrate court not governed by the Civil Practice Act and in which there was no record).

Our conclusion in this regard is further buttressed by the fact that since *Groves*, the legislature has further constricted the time in which a plaintiff may voluntarily dismiss his or her action. Compare OCGA § 9-11-41 (a) (1) (A) (2019) (allowing dismissal "any time before the first witness is sworn") with OCGA § 9-11-41 (a) (2002) (allowing dismissal "any time before the plaintiff rests his case") with Code Ann. § 81A-141 (1982) (allowing dismissal "any time before verdict"). Thus, we see no basis on which to hold that the principles stated in *Grove* would not apply to the facts of this case.

3. Father asserts that every order issued by the Georgia Court must be vacated because he never had standing to bring this action in the first place. In so arguing, he does not dispute that he is the legal father of the children; indeed, he admits it. Rather,

14

he contends only that the order from the California Court – which he admits exists – legitimating the children and granting him custodial rights was never domesticated in Georgia.

Suffice it to say, the record is replete with Father's sworn averments that he is the legal father of the children, a fact that is otherwise stipulated to by the parties and uncontested throughout the history of the case. See *Foster v. State*, 157 Ga. App. 554, 555 (278 SE2d 136) (1981) ("Statements in pleadings are considered as judicial . . . admissions, and . . . until withdrawn or amended, are conclusive."). Nothing in Georgia law provides that a sworn, stipulated, and undisputed fact regarding paternity cannot be considered such in the absence of a domesticated order from a foreign court. Cf. OCGA § 19-9-85 (recognizing that a child custody orders from foreign courts "may" be registered in this state).

4. Lastly, Father argues that the case should be dismissed because the Georgia Court filed its order appointing the GAL and its order granting the GAL's motion for therapy, visitation, and an extension of time before it filed the nunc pro tunc order from the emergency hearing in which it held that the GAL would be appointed. Any argument that Father was harmed by the sequence in which the Georgia Court filed its orders lacks merit. See *Reder v. Dodds*, ___, Ga. App. ___ (5) (Case No.

A19A1668, decided Feb. 24, 2020). ("In order to constitute reversible error, both error and harm must be shown.") (citation and punctuation omitted).

*Judgment affirmed. McFadden, C.J., Barnes, P.J., Doyle, P.J., Dillard, P.J., McMillian, P.J. and Mercier, Gobeil, Coomer and Hodges, JJ. concur. Brown, J. concurs in judgment only. Miller, P.J., Reese, Markle, JJ. and Senior Appellant Judge Herbert E. Phipps, dissent.\**

# In the Court of Appeals of Georgia

A19A1936. RAZI v. BURNS.

MILLER, Presiding Judge, dissenting.

I respectfully dissent because the trial court failed to make the proper findings to support its exercise of jurisdiction under the UCCJEA.

Under OCGA § 19-9-63, for a court in Georgia to exercise jurisdiction over a child custody order entered in another state, it must first determine that it has jurisdiction to make the initial child custody order under sections (1) or (2) of OCGA § 19-9-61 (a). In addition to this determination, one of the following scenarios must also be met:

> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under Code Section 19-9-62 or that a court of this state would be a more convenient forum under Code Section 19-9-67; or

(2) A court of this state or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.

OCGA § 19-9-63.

It is clear that neither of the two prongs of OCGA § 19-9-63 have been satisfied in this case. Section (1) is clearly not met in this case since the California court has not determined that it no longer has jurisdiction, nor has it made an explicit determination that Georgia would be a more convenient forum. Section (2) has also not been met because the trial court has not made any affirmative determination that the children do not reside in California. The plain language of the statute is clear that a court must affirmatively make this determination, and the trial court has not done so. A boilerplate statement that "jurisdiction is proper" is insufficient to meet this explicit statutory demand, and it is not our role as an appellate court to make this factual determination in the first instance.[1] We cannot be the court of appellate review and simultaneously make the determinations that the statute requires of the trial court.

---

[1] The Supreme Court of Georgia's holding in *Wondium v. Getachew*, 289 Ga. 208, 210 (2) (710 SE2d 139) (2011), is not to the contrary. In that case, the Supreme Court was discussing a portion of the "home state" provision that did not explicitly require the trial court to "determine" anything. See OCGA § 19-9-61 (a).

2

Even if we could, I note that the record shows that the father moved the children to California at some point around the time that the petition in this case was filed, and it is not clear when, or if, the children moved back to Georgia. Neither party's pleading in this case definitively says whether the children were residing here in Georgia or were still residing in California at the time the petition was filed here in Georgia.[2] See *Plummer v. Plummer*, 305 Ga. 23, 25-29 (2) (823 SE2d 25) (2019) (instructing us to evaluate whether a trial court has jurisdiction under the UCCJEA by looking to the facts and circumstances at the time the petition is filed). Accordingly, I cannot say that the trial court has made the requisite findings to support its exercise of jurisdiction under OCGA § 19-9-63. See *Delgado v. Combs*, 314 Ga. App. 419, 425-428 (1) (724 SE2d 436) (2012) (concluding that the trial court erred by exercising jurisdiction under OCGA § 19-9-63 when there was a lack of evidence to support its conclusion that none of the parties still resided in Kansas).[3]

---

[2] The father's allegation in his petition that Georgia is the children's "home state" is not sufficient to establish the children's residence because the technical statutory term "'home state' is not synonymous with [a person's] 'residence.'" (Citation omitted.) *Markle v. Dass*, 300 Ga. 702, 705 (797 SE2d 868) (2017).

[3] I further note that it does not appear that the trial court could have exercised emergency jurisdiction under OCGA § 19-9-64. Among other things, the trial court in this case permanently modified the custody arrangement to grant sole custody to the father, and so "the court could not use temporary emergency jurisdiction to take

Although the father filed the petition in Georgia and yet is challenging the trial court's jurisdiction, we have an independent duty to ensure that the trial court properly exercised its subject matter jurisdiction. *Barland Co. v. Bartow County Bd. of Tax Assessors*, 172 Ga. App. 61, 62 (322 SE2d 316) (1984). I share the majority's concern that the petitioner may be attempting to manipulate the court system to escape a child custody order that he does not like. In my view, however, the remedy for this situation is for Georgia courts to exercise caution, restraint, and thoroughness before assuming jurisdiction over modification petitions like the one in this case because the provisions of the UCCJEA are designed to address these scenarios. Because I would vacate the trial court's orders and remand for it to make the factual findings that the UCCJEA demands, I respectfully dissent.

I am authorized to state that Judge Reese, Judge Markle and Senior Appellant Judge Herbert E. Phipps join me in this dissent.

---

the action that it did." *Delgado*, supra, 314 Ga. App. at 425 (1).

4